**ALABAMA DISABILITIES ADVOCACY PROGRAM, etc., Plaintiff,**

v.

**J.S. TARWATER DEVELOPMENTAL CENTER, etc., et al., Defendants.**

Civ. A. No. 95–T–383–N.

United States District Court, M.D. Alabama, Northern Division.

July 6, 1995.

---

426

William F. Addison, Addison, Vickers, Howell & Talkington, L.L.C., Montgomery, AL and Victoria Ann Farr, Alabama Disabilities Advocacy Program, Tuscaloosa, AL, for plaintiff.

June O. Lynn and G.R. (Rick) Trawick, Dept. of Mental Health & Mental Retardation, Montgomery, AL, for defendants.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

In this lawsuit, plaintiff Alabama Disabilities Advocacy Program claims that state mental health officials have refused to release to it the records of two deceased former residents of one of the state's mental health facilities in violation of the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C.A. §§ 6000–6083 (West Supp.1995). For the reasons stated below, the court holds that the Advocacy Program is entitled to the records.

## I. FACTUAL AND STATUTORY BACKGROUND

The Advocacy Program received an anonymous telephone call questioning the circumstances of the deaths of two residents of the J.S. Tarwater Developmental Center, a state-operated institution for the mentally retarded. A transcript of the anonymous telephone call regarding the two residents, known as G.A. and M.V., reads as follows:

"Ugh yes I'm calling in regard to the Wyatt vs. Hanan Lawsuit. Let me put a bug in your ear this is for the lawyer's representing Wyatt. We had two deaths at Tarwater; one of them was a gentlemen named G[.]A[.] He was exposed to the cold weather and died two days later of pneumonia. He was forced to go down to programming. He was not dressed for it plus he was very, very sick at the time he went. Now there is a video tape that exists of his being sick but ugh it is my understanding the ugh administration at Tarwater has confiscated the video. If you people act very quickly you might actually get some action taken because ugh there ugh whatchacallit the administration at Tarwater are being very very careful. There covering this thing up big time. You want to act now. I suggest you check up on G[.]A[.] death and ugh the fact that he was exposed to the cold weather, he was taken to the hospital on Thursday with hyperthermic conditions and died two days later. Also a week, not less that a week later M[.]V[.] died. You need to check that one out. That was also one of these strange situations. Anyway Good luck." [1]

The deaths of G.A. and M.V. have since been verified.[2]

The Advocacy Program requested that state officials release to it the records of those two residents. When that request was refused, the Program initiated this lawsuit requesting, pursuant to the Developmental Disabilities Act, that the court order the following defendants to release the records: the J.S. Tarwater Developmental Center, its director, and its custodian of records, and the Alabama Department of Mental Health and Mental Retardation, its commissioner, its associate commissioner, and its custodian of records.

Under the Developmental Disabilities Act, states receive certain federal assistance only if they have a "system" in place "to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C.A. § 6042(a)(1) (West Supp.1995). In particular, the system, which in Alabama is the Advocacy Program, has "the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the

---

1. Exhibit I.D. All exhibits referenced in this opinion are located in the Joint Record filed on June 2, 1995.

2. Exhibits I.A, I.B (death certificates).

incidents occurred." 42 U.S.C.A. § 6042(a)(2)(B) (West Supp.1995).

The Developmental Disabilities Act also indicates circumstances that entitle the Advocacy Program to access records. For instance, the Act allows the Program access to the records of "any individual with developmental disabilities,"

"(I) who, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;

"(II) who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

"(III) with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities there is probable cause to believe that such individual has been subject to abuse or neglect."

42 U.S.C.A. § 6042(a)(2)(I)(ii) (West Supp. 1995).

## II. STANDING

The court first turns to the preliminary issue of standing, which is used to determine "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The Supreme Court has held that standing is constitutionally mandated by Article III's case-or-controversy requirement. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The Advocacy Program argues that it has standing both on its own behalf and on behalf of individuals with developmental disabilities. Because the Advocacy Program has standing on its own behalf, it is unnecessary to determine representative capacity standing. Further, although the Advocacy Program argues that it need not show injury to its interests to sue on its own behalf, the court bases its holding on a finding of injury and does not reach the question of whether the statute requires a showing of injury.

■ To establish standing, a litigant must show: (1) "injury in fact," meaning the invasion of a legally-protected interest which is concrete, particularized, actual, and imminent; (2) "a causal relationship between the injury and the challenged conduct"; and (3) "a likelihood that the injury will be redressed by a favorable decision." *Northeastern Florida Chapter of Assoc'd Gen. Contractors of Am. v. City of Jacksonville,* —— U.S. ——, ——, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993); *accord Lujan,* 504 U.S. at 560–61, 112 S.Ct. at 2136.

■ Based on the statutory scheme, the Advocacy Program has standing to bring a lawsuit requesting records. First, the Developmental Disabilities Act gives the Advocacy Program authority to investigate abuses as well as the right to receive records under certain circumstances. If the Program is denied records, it suffers a direct injury to its statutory interest in investigating abuses, to the extent that such an investigation entails examining records, and to its statutory interest in the records themselves. This is a perfect example of a legally-protected interest which is concrete, particularized, actual, and imminent. Second, there is a direct relationship between the Advocacy Program's inability to investigate and access the records and the defendants' conduct in denying access to the records. Third, a favorable decision by the court requiring the defendants to turn over the requested records would redress the injury. Accordingly, the court concludes that the Advocacy Program meets the standing requirements.

## III. DISCUSSION

This is a lawsuit about whether the Advocacy Program is entitled to access to records for the purpose of conducting an independent investigation into the deaths of G.A. and M.V. The court holds that such access is required.

### A.

■ There is a specific provision in the Developmental Disabilities Act authorizing access to records that covers the situation here. That provision imposes the following three requirements for access to records: (1) the individual concerned must be unable to authorize access because of a mental or phys-

ical condition; (2) the individual must not have a legal representative, including a legal guardian (except the state) and conservator; and (3) either the individual must be the subject of a complaint received by the system (here the Advocacy Program) or the system must have probable cause to believe there has been abuse or neglect. 42 U.S.C.A. § 6042(a)(2)(I)(ii) (West Supp.1995). The court examines each of these requirements.

■ The first requirement is that G.A. and M.V. be unable to authorize the release of their records because of a mental or physical condition. It seems obvious that death is a physical condition that fulfills this requirement. The defendants argue, however, that deceased people fall outside the scope of this provision altogether. The defendants support this argument by referring to the parallel records provision in the Protection and Advocacy for Mentally Ill Individuals Act, 42 U.S.C.A. §§ 10801–51 (West Supp.1995), which addresses advocacy for individuals with mental illnesses rather than developmental disabilities. The relevant provision specifically notes that records are available for "an individual who has died." 42 U.S.C.A. § 10805(a)(4)(B) (West Supp.1995). There is no evidence, however, that the lack of this language in the Developmental Disabilities Act implies that Congress meant to exclude death from that Act's record access provisions. Absent some indication other than silence, the court will not attribute to Congress a desire to eliminate from scrutiny the most serious abuses that result in death in a statute designed to ensure advocacy for the rights of people with disabilities.

■ Further, what evidence there is points in the direction of including death in the Developmental Disabilities Act's record access provisions. To begin with, legislative history suggests that the record access provisions of the two acts are meant to be "consistent." S.Rep. No. 113, 100th Cong., 1st Sess. 24 (1987), *reprinted in* 1987 U.S.C.C.A.N. 781, 803–04. Although this is not determinative of legislative intent, it does make the court cautious of reading the Developmental Disabilities Act to exclude access to records of deceased people. To this caution is added the Developmental Disabilities Act's definition of "records" to include reports of death investigations. 42 U.S.C.A. § 6042(f) (West Supp.1995). Thus, Congress must have contemplated that some records of deceased people were covered. Given this, the lack of explicit language in the Developmental Disabilities Act similar to that in the Mentally Ill Individuals Act cannot be given the meaning urged by the defendants. For these reasons, the requirement that an individual be unable to authorize release of records is fulfilled upon the individual's death.

■ The second requirement is that G.A. and M.V. must not have a legal representative, including a legal guardian (except the State) and conservator. This is a question of state law, which provides as follows: "The authority and responsibility of a guardian of an incapacitated person terminates upon the death of the guardian or ward." 1975 Ala. Code § 26–2A–109 (Michie 1992). It is true that state law provides for granting administration of an intestate's estate to certain people. 1975 Ala.Code § 43–2–42 (Michie 1991). Assuming that the administrator of an estate falls within the definition of legal representative, the court still finds that neither G.A. nor M.V. has a legal representative. Letters of administration are not granted automatically upon death, but must be granted by a probate judge. 1975 Ala.Code § 43–2–40 (Michie 1991). There is no evidence of such a grant for either G.A. or M.V.

■ The third requirement is met because G.A. and M.V. were the subjects of a complaint received by the Advocacy Program and there is probable cause, either of which meets the requirement. The complaint question involves asking whether an anonymous phone caller asserting specific wrongdoing with respect to G.A. and stating that M.V.'s death "was also one of these strange situations" is a complaint.[3] The Developmental Disabilities Act does not define complaint and the court declines to place any specific requirements on the source or type of complaint in light of the broad remedial purposes of the Act. To require that complainants divulge their names or reduce their allega-

---

**3.** Exhibit I.D.

tions to writing and sworn testimony or make charges of a particular nature would dilute the Act and too narrowly construe the complaint requirement. Therefore, the anonymous call falls into the category of a complaint for the purposes of the Developmental Disabilities Act.

■ The alternative method of meeting the third requirement is a showing of probable cause, which does not involve establishing what actually happened but presenting evidence in the record that supports allegations of abuse and neglect.[4] The defendants have submitted a number of exhibits that purport to show that there has been no abuse or neglect.[5] The defendants, however, miss the point; they put the cart before the horse. Whether the defendants' evidence outweighs the phone call is not yet before the Advocacy Program for determination. Rather, the issue is whether there is enough evidence to establish probable cause and thereby warrant a further inquiry, that is, an investigation, by the Advocacy Program. The anonymous phone call provides enough evidence to support allegations of abuse and neglect and thereby establishes probable cause.

### B.

■ Based on the fulfillment of the three requirements set out in the Developmental Disabilities Act, the Advocacy Program is entitled to have access to the requested records. The defendants' restrictive reading of the application of the requirements must be rejected in light of an overall reading of the Act, which gives the Advocacy Program "the authority to investigate incidents of abuse and neglect" if the incidents are reported or if there is probable cause that the incidents happened. 42 U.S.C.A. § 6042(a)(2)(B) (West Supp.1995). The court agrees with the Fifth Circuit Court of Appeals that the Act requires "an 'effective' system of advoca-

cy." *Mississippi Protection & Advocacy System v. Cotten,* 929 F.2d 1054, 1058–59 (5th Cir.1991). Any other reading would attribute to Congress an intent to pass an ineffective law. The authority to investigate would mean nothing and advocacy in the form of investigation would be ineffective without access to records. Indeed, even if the Act did not mention records, a strong argument could be made that the Advocacy Program would be entitled to all information necessary to investigate incidents of abuse and neglect if the prerequisites of a report or probable cause are met.

### IV. CONCLUSION

Based on the above analysis, the court holds that the Alabama Disabilities Advocacy Program is entitled to immediate access to records regarding G.A. and M.V. An appropriate judgment and injunction will be entered.

### *JUDGMENT AND INJUNCTION*

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court that:

(1) Judgment is entered in favor of plaintiff Alabama Disabilities Advocacy Program and against defendants J.S. Tarwater Developmental Center, its director, and its custodian of records, and Alabama Department of Mental Health and Mental Retardation, its commissioner, its associate commissioner, and its custodian of records; and

(2) Defendants are each ENJOINED and RESTRAINED from failing to release forthwith to plaintiff Alabama Disabilities Advocacy Program the records of G.A. and M.V.

The clerk of the court is DIRECTED to issue a writ of injunction.

---

**4.** Probable cause in this context does not require as great a showing as in a context in which the right of private citizens to be free from unreasonable searches and seizures could be implicated, under the fourth amendment to the United States Constitution. *Cf. Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (discussing probable cause when fourth amendment interests at stake). To require the disclose of rec-

ords here would not implicate this concern. Moreover, to graft onto the Developmental Disabilities Act a standard comparable to the probable cause standard under the fourth amendment would substantially frustrate the goal of protecting persons with disabilities.

**5.** Exhibits II.A–F.

It is further ORDERED that costs are taxed against defendants, for which execution may issue.